Good morning, your honors. My name is Jinxuan Li. I'm here on behalf of the petitioners. First of all, I would like to inform the court that the male petitioner in this case has already had his status legalized. His father was granted asylum many years ago, and he filed an I-730 petition, that is, an SR-Li relative petition. That petition was approved by the CIA on May 9, 2008, just last month. Therefore, we are no longer pursuing an asylum claim as it relates to the male petitioner. What does that do for Chen? Actually, your honor, I believe that shows that the latest submission by the Council for the Government would be irrelevant to the matter of JS. But the female petitioner's claim was still, because the court's analysis relating to the female petitioner's asylum claim would still be the same. Okay, I'm sorry, but if he now is withdrawing his claim, and he's here legally, does that have any effect on her status? No, your honor, because they were not married at the time when they filed asylum, and they are not married as of today. So the female petitioner's asylum claim is still based upon her fear of forced abortion if she goes back to China. What is there in the record that proves that a pregnant woman returning to China unmarried is going to be forced to have an abortion? Yes, your honor, if we look at page 270 of AR, it shows that a woman who was deported to China from Australia was forced to abort her pregnancy 10 days before she was due to give birth. And also the country report shows that... You're talking about the Australia story? Yes, your honor. But it doesn't say anything about the specific city that Ms. Chen is from, correct? Well, your honor, if you look at the country condition, it shows that forced abortion is still being carried out in China. And this is to show a well-founded fear of forced future persecution. Petitioners only need to show one intense chance that she will likely be forced to have an abortion. She doesn't have to establish conclusively that she will be forced to have an abortion. So if we look at the country condition, the general condition in record as a whole, then I believe the court, a reasonable fact finder, would be compelled to conclude at least there's one intense chance that if a pregnancy was not authorized by the Chinese government, the pregnant woman would be forced to abort the pregnancy. Mr. Li, I understand this question is asking for something that's not in the record. But where do things stand with respect to her now? Now, she's a single mother with two children. And I believe the record is clear that if she goes back to China, she will face the possibility of forced sterilization. Well, your honor, what before this court is that whether or not the BIA heard this decision? Well, you see, here's the problem. We remanded for the BIA to give your clients an opportunity to show why the BIA was wrong in its conclusion, which was at the time based upon her being pregnant the first time. That's right. So instead of doing that, that is, instead of showing why that was in error, what your clients elected to do was say, well, she's now pregnant again. Yes, your honor. So in effect, our mandate wasn't followed at all. She just comes in and says, well, offer some, I suppose, new evidence that she was pregnant again without a specific request to remand, but I suppose implicitly asking for remand. Is that the way you see it? That's correct, correct, your honor. I think the defender was following the court's rule. Are you now taking the position, what are you now taking the position is error, that the BIA failed to remand to consider the effect of the second pregnancy? What's the error? That's right, your honor. The BIA in its second decision denied our appeal simply primarily because in BIA's opinion, we failed to argue that the facts noticed by the BIA in its first decision were inaccurate. Well, and you didn't. What you did was to say, but she's now pregnant the second time, so never mind the reason for the remand, right? Actually, the reason for the remand was exactly in the court's opinion that the BIA ignored the repetitive nature of pregnancy. Well, I know we could keep this up for a very long time, presumably, but the real point I'm trying to get is what you're saying the error is that justifies granting the petition today. Yes, first of all, the BIA should have remanded to the IG for the petitioner, especially the female petitioner to show that she faces well-founded fear of abortion, even though she may not be pregnant at a time when she appears before the IG, because it's possible that she will get pregnant in the future because she has already gotten pregnant twice. Was that because the BIA treats the motion to remand, motion to reopen similarly, would that have been her first motion to reopen? Is that like a motion to reopen as of right and would it have been timely or would it have been outside the 90-day time frame? I think it would be outside, it would be time barred, Your Honor, because I know this is not a fundamental change of circumstances in the country of the origin, so therefore she would not be able to allow to have her case reopened. So why was it error then for the BIA not to remand? What's the legal basis for saying that that was an error? Yeah, the BIA erred in its first decision by saying that she did not have a reasonable subjective fear of forced abortion. Well, the error that we identified was that the BIA had relied on facts, not in the record, not that it had made a wrong decision. Yeah, that's right, Your Honor. And also, I think the BIA's denial is based on two reasons. One is that the respondent, the petitioner, was no longer pregnant. And secondly, that we did not present any documentary evidence to show that a pregnant woman would be facing forced abortion if she is returned to her home country. But that's not true. So based on that alone, as I just pointed out, the Australia newspaper article, just based on that alone, I think it warrants an agreement to the BIA, for the BIA to remand the case to the IG to allow the female petitioner to present her asylum claim based upon the fact that now she's a single mother with two children. If she goes back to China, then she will face possible sterilization, being a single mother with two children. All right, Mr. Li, thank you. Why don't we hear from Mr. Earl. Thank you, Your Honor. Your Honors, Christopher Merrick-Reel again for the respondent. This petition for review should be denied because the petitioner has failed to establish that the record evidence compels a finding that she would have a well-founded fear of persecution if returned to the People's Republic of China. At the outset, regarding Petitioner He's new grant of derivative asylum status through I'm still in contact with the client agencies as to how he qualified because from my reading of the record, they were representing petitioners, he and Chen were representing themselves as husband and wife before. In fact, on record 81, the immigration judge asked, and is Petitioner Chen going to ride with her husband's asylum application? And counsel at that time said, yes, Your Honor. So at this point, I am a little confused, but regarding that he's now waived Petitioner He's asylum. Has he withdrawn it? I wasn't sure. I thought he said that he wasn't. He was only proceeding on Petitioner Chen's asylum. So it was counsel. Has counsel waived the petitioner or has he? I was a little confused on because he did say withdrawn. But because here Petitioner Chen was riding on Petitioner He's asylum application. There was only one asylum application in the record. And she was the secondary party to his petition. Yes. A petitioner. His petition is now problematic and we don't know whether it's still pending or not. Well, regarding any derivative asylum status, that's something that extra record evidence. It's not before this court. I've learned from regarding this as a fact on the termination regarding his removal order. This is something that he'd have to present to the Board of Immigration Appeals to address whether the termination of his removal order. And then there are also questions that if he's through during the removal proceedings representing that he is married, but now getting derivative status to his father where the statute at INA Section 208 B3 big A and dash B state that only an unmarried alien over the age of 21 can qualify. So. But also if he's married, he wouldn't qualify under his father's papers. Yes, Your Honor. Because also Section 101 B of the INA defines child as an unmarried alien. Well, they've never claimed to be married except in a common law sense, have they? I mean, in the record, we don't we don't have any record that they ever claimed to be married. I. You're right, Your Honor, that they did say that they are the common law marriage. But on the asylum application, you did notice that that she is the spouse of him. So I don't know if that during the removal proceedings, they were then representing themselves. We have 50 different state laws on what constitutes a common law marriage. So. But regardless. Hold that aside. What do we do? Exactly. Regardless of that, you still have to adjudicate the application. And based on the record evidence, they failed to establish that they have a well-founded fear of sterilization or forced abortion. In fact, there's record evidence that actually points towards the direction that the Board of Immigration Appeals was finding. At records sites three fifty five, three fifty eight and three sixty three. In particularly record site three sixty three deals with the situation of returning with the United States citizen children. At least some couples that have children in the United States beyond the nominal limits and the return to China are at worst given modest fines. So there isn't record evidence compelling the finding that the petitioners would undergo a sterilization or a forced sterilization or forced abortion. It was petitioners burden and they were afforded this opportunity by this court to present their claim again. They didn't address the BIA's prior reasoning in noticeably the judicially noticed fact that Petitioner Chen had already given birth. What do you make of our remand? Because the issue of whether the record evidence was sufficient, I guess, was raised before and passed on. And we remanded simply because the BIA took it upon itself to take judicial notice of her. The fact that she's found to have not been pregnant anymore. And so we remanded to have that taken into account. So is there a law of the case issue here? I'm sorry. Is there any law of the case issue here? I mean, is it still alive for us to decide whether the record evidence as presented was sufficient? Your Honor, we contend that they instead on remand inserted a whole new claim and it didn't address the prior reason. I'm asking just for help on the issue. It looks to me like we in effect said that the record evidence was fine. I mean, we didn't explicitly say that, but we didn't. That's not why we remanded. So are we supposed now to go back to where the appeal was two or three years ago? Or should we simply say, look, that issue was before us. We didn't have a problem with it. The only problem we had was at the BIA level where it took judicial notice of the fact that her pregnancy is bound to have been over. And we send it back for them to deal with that issue, not with the substantiality of the evidence. I believe petitioners have reopened that by asserting the new claim by stating that now their child and additionally adding that they would be forcibly sterilized, which was a new claim. Their first original claim was just forced abortion. So the board did reach on that issue. Procedurally to me, this is just a mess. And I guess that's what I'm trying to look to you for help on. What do you think is before us? Because we're not in the first instance court. We remanded for a specific reason, and then something happened back there with respect to that remand, and now it's on appeal again. Exactly what does the government think we need to decide? I would say that there are two issues. One, that the previous claim regarding the judicially noticed fact was abandoned and that petitioners have introduced an entirely new claim that the boards on the second page of the board's decision where it says there's no documentary evidence to support that their current claim, which is PRC Nationals returning with a pregnancy and a United States born child, that this record, there was no documentary evidence to support that. But nobody's made that decision. So what the board decided was that it wouldn't remand, right? That's right, yes. So is that the legal error? Yes, actually yes, Your Honor. That they didn't introduce the new documentary evidence to compel that, to warrant remand. So is that the issue before us, or is it something else? Your Honor, yes. It would be the lack of documentary evidence that they submitted with their motion, because all they did was cite two previous record evidence. And the standard for reviewing is the denial of a motion to remand. What is that? That would be an abuse of discretion standard, Your Honor. And what is the legal requirement for the BIA to remand? Do they have any legal requirement or regulatory requirement? It would be under the same standard of a motion to reopen. And then I believe Matter Coelho sets out the standards, whether they're prima facie eligible for relief. And it would be looking for new and material evidence. And the only evidence that they submitted was that she's pregnant now with a second pregnancy, and in addition cited two record evidence or evidence that was already in the record. Well, okay, then address that, if you will. If she's presented evidence that she's now pregnant with a second child, a U.S. citizen child, and there's evidence in the record already that her province, unexceptionally, I mean, in all cases, insists on sterilization of people who have two children without permission, why shouldn't the BIA have remanded to develop the record on the issue? I believe, Your Honor, that the BIA was looking at the record and ‑‑ I'm sure they were, but so have I been. So there's evidence in the record. Forget the Australian newspaper article, all right? There's evidence in the record that the province from which Chan comes has a policy. I'm trying to find the exact line. It has a policy that women giving birth to two children shall unexceptionally be sterilized. Now, that's in the record. So that plus she's now pregnant with and going to have a second child, why was the BIA ‑‑ why didn't the BIA use its discretion in failing to remand to develop the evidence on that? Your Honor, I believe the BIA has found that there was a data file that was documentary evidence. Hey, look, I'm asking you now why the BIA would not have abused its discretion in making that decision in light of the two things I mentioned. Forget all the rest of it. Regarding their abuse of discretion, the only thing I can think of is that they felt that the record evidence that they pointed to did not establish a prima facie eligibility. Okay, any other questions here? Well, what was that evidence that in this province that there were unauthorized having more than or having any unauthorized children causes a woman to be sterilized? Is that in the country report or is it? It's a birth control policy. I don't know how to pronounce it. And how does that appear in the record from an exhibit? It's an exhibit in the record. Why shouldn't that go back to the IJ to determine whether it's true or not? Your Honor, the only thing I can say is the BIA might have been under the impression that there's no evidence that they feel prima facie evidence regarding United States-born children that that would subject a PRC national to sterilization because of a United States-born child. Okay, anything else? All right, thank you. Thank you, Your Honor. Mr. Li. I think I'm able to answer the question just raised by the court. And looking at page 236, and it says that all women with two children without exception be sterilized within one month after their second child is born. And also looking at the statistics from- Can I just ask you, I'm looking at page 236. It refers to all those who marry early and give birth early. What does marry early and give birth early mean? Okay. In general, they have a birth control policy that stipulates that women can only get married after she reaches the age of 20. So if a woman marries before the age of 20, that will be considered, and gives birth before the age of 20, that will be considered as an early marriage. So is Ms. Chen, does she fall into that category of marry early and give birth early? She doesn't qualify under that category, but in any event, her birth, her marriage was also unauthorized because she was not able to get a marriage certificate. In China, you can only give birth if you obtain a permit to give birth. So without a marriage license, you will not be able to obtain a permit to give birth. So in that sense, I think the female petitioner will fall under the same category because the marriage was unauthorized. And also, just one last thing I want to point out, Your Honor, is the statistics. On page 235, it says there's a statistic from the same province the female petitioner was from. It said of the 71,801 women with second children, 94.20% were sterilized. So again, I just want to point out that to establish a well-founded fear, we only need to show one intense chance. So over here, the statistic shows that over 90% of women with two children were sterilized. So if we take into account this statistic, the female petitioner will clearly be easily able to show that she would face a well-founded fear of forced sterilization upon her return to her home country. Thank you, Your Honor. Thank you, Mr. Li. Thank you, Mr. Creel. The matter just argued will be submitted.
judges: Goodwin, Rymer, Ikuta